UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER NEFF,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>M. HA, et al.,<br><br>　　　　　Defendants. | Case No. 2:18-cv-04842-FLA (SP)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to the Honorable Fernando L. Aenlle-Rocha, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## **INTRODUCTION**

On May 31, 2018, plaintiff Christopher Neff, a California state prisoner proceeding pro se and in forma pauperis, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. In the Complaint, plaintiff alleged his constitutional rights were violated during his confinement at the California State Prison, Los Angeles County ("CSP-LAC") and Pelican Bay State Prison ("PBSP") because medical staff

retaliated against him and denied his requested medical treatment, including a lower tier cell assignment, after he was shot in the right ankle during a prison riot. The court found the Complaint subject to dismissal, but granted leave to amend.

Plaintiff filed a First Amended Complaint ("FAC") on September 27, 2018. In the FAC, plaintiff alleged defendants at PBSP – specifically, Sue Risenhoova, a nurse practitioner; Jennifer Burr, a licensed vocational nurse; Evelyn Wood, a licensed vocational nurse; and Christian Caballero, a registered nurse – showed deliberate indifference to his medical needs in violation of the Eighth Amendment, including denying him a lower tier assignment. The court found the FAC subject to dismissal, but again granted leave to amend.

Plaintiff filed a Second Amended Complaint ("SAC") on August 9, 2019. In the SAC, plaintiff alleged the same four nurse defendants at PBSP showed deliberate indifference to his medical needs and safety in violation of the Eighth Amendment, may have used excessive force, and committed various torts under state law. The court found the SAC's allegations may have been sufficient to state a claim for deliberate indifference to medical needs for failing to assign him to a lower tier cell, but were insufficient to state any other claim. The court again granted plaintiff leave to amend, and also gave him the option to proceed against defendants on only the deliberate indifference to medical needs claim.

Defendant filed a Third Amended Complaint ("TAC") on October 8, 2021. The TAC names the same four nurse defendants, Risenhoova, Burr, Wood, and Caballero, although this time names them in both their individual and official capacities.[1] The TAC asserts a single claim, for deliberate indifference to

---

[1] In the Complaint, FAC, and SAC, plaintiff named defendant Christian Caballero. In the TAC, plaintiff names defendant Christopher Caballero. Given the consistency of the allegations, it is apparent these are the same person. Further, documents attached to the TAC show defendant Caballero's name as Christian Caballero. Thus, the court assumes plaintiff intended to again name as a defendant

2

plaintiff's medical needs, based on defendants' failure to grant plaintiff's request for a lower tier cell assignment.

After careful consideration of the TAC, the court finds plaintiff has failed to correct the deficiencies the court identified previously.  Further, plaintiff's claim against defendants in their official capacity are barred by Eleventh Amendment sovereign immunity.  Because it is apparent plaintiff has stated his best case and has again failed to state a viable civil rights claim, the court recommends the Third Amended Complaint and this case be dismissed without leave to amend.

## II.

## ALLEGATIONS OF THE THIRD AMENDED COMPLAINT

On May 24, 2017, there was a commotion that occurred between prisoners and correctional officers at PBSP.  TAC at 16.[2]  During the commotion and chaos, plaintiff was shot in his right ankle/foot with a mini 14 round.  *Id.*  After plaintiff was escorted off the yard, he was taken to Sutter Coast Hospital and treated for a gunshot wound by Dr. Wahidi.  *Id.*  Dr. Wahidi provided instructions on things to do and not to do.  *Id.*  Dr. Wahidi told plaintiff to rest his foot and to not put pressure on his ankle or foot because there was a chance that this could cause further damage to the wound.  *Id.*  Dr Wahidi told plaintiff that if for some reason his ankle, legs, or toes become swollen, if redness appeared, or if plaintiff's pain increased, to seek immediate medical attention.  *Id.*  After the doctor's consultation and several tests, plaintiff continued to feel severe pain in his foot and ankle but was escorted back to PBSP.  *Id.*

Plaintiff was then taken to the Central Treatment Center at PBSP for follow-up treatment and was seen by defendant Risenhoova, a nurse practitioner, who

---

Christian Caballero.

[2]  Citations to pages in the TAC are to the pages electronically supplied by the court's CM/ECF system.

3

1 | gave plaintiff crutches to help him walk. *Id.*  Plaintiff asked defendant Risenhoova
2 | for a lower tier, lower bunk placement ("chrono") so that correctional officers
3 | assigning plaintiff to his new housing unit would see that plaintiff had been shot
4 | and know to place him on a bottom tier. *Id.* at 16-17.  Defendant Risenhoova said
5 | plaintiff did not need the chrono because he was not going to be placed on the top
6 | tier. *Id.* at 17.  Plaintiff insisted that he would be given such a placement because
7 | staff responsible for housing assignments would not know that walking up and
8 | down the stairs would cause plaintiff pain. *Id.*  It is the responsibility of medical
9 | staff to notify correctional staff of medical care or attention by giving chronos. *Id.*
10 | Plaintiff informed defendant Risenhoova that he was in severe pain, and she
11 | acknowledged that his ankle and foot were still swollen. *Id.*  Plaintiff also
12 | informed defendant Risenhoova that Dr. Wahidi told plaintiff to stay off his injury
13 | and let it rest. *Id.*  Defendant Risenhoova only assumed what correctional officers
14 | would or would not do and dismissed plaintiff, although she could have looked in
15 | the computer. *Id.*

Plaintiff was then escorted to his new housing cell which was on an upper tier. *Id.*  Plaintiff was suspected of attempting to assault a correctional officer during the commotion. *Id.*  As a result, right after being discharged from medical staff, he was housed in Administrative Segregation. *Id.*  Plaintiff was housed in C3-#222 on the top tier overflow. *Id.*  Plaintiff told the correctional officers escorting him that he could not climb the stairs because he had just been shot and was in pain. *Id.*  Plaintiff also told the officers that defendant Risenhoova had just told plaintiff he would not be placed on the top tier. The officers just looked at plaintiff and told him there was nothing they could do because plaintiff did not have a lower-tier chrono, and he needed to go back to medical and get such a chrono. *Id.*  Plaintiff was forced to climb up and down the stairs, causing him unnecessary pain. *Id.*  On the wall next to the stairs in front of the cells there is a

big yellow sign that states, "Danger – Do Not Walk On Stairs With Shower Shoes." *Id.* But due to his swollen ankle and foot plaintiff could only wear shower shoes and use his crutches to walk up and down the stairs. *Id.*

On May 26, 2017, plaintiff went to medical for a dressing change, which was done by defendant Burr, a licensed vocational nurse. *Id.* Plaintiff again asked for a lower-tier chrono because it had only been two days since he was shot and living on the top tier was causing severe pain and swelling in his ankle and foot. *Id.* Plaintiff also showed defendant Burr that he was wearing his shower shoes because he could not put on his regular shoes, and he was using crutches while wearing shower shoes to go up and down the stairs, which could have caused plaintiff to have an accident and make his condition worse. *Id.* Plaintiff informed defendant Burr that the stairs were increasing his pain and suffering and his condition was getting worse. *Id.* Defendant Burr told plaintiff it was not her job to pass out chronos. *Id.* Plaintiff responded that it was her responsibility to provide adequate medical care or bring someone who could provide such care, and asked if there was a doctor he could speak with. *Id.* Defendant Burr told plaintiff, "Today is Friday, it's a weekend, no doctors are on call, you have to wait like everyone else" and "put in a medical slip, come in and we'll interview you and put you on a waiting list to see the doctors which will take two to four weeks." *Id.*

The next day, on Saturday May 27, 2017, plaintiff went to medical again for another dressing change. *Id.* Plaintiff was treated by defendant Wood, a licensed vocational nurse. *Id.* Plaintiff informed defendant Wood of Dr. Wahidi's recommendation, and said that his ankle and foot were getting worse because of walking and going up and down the stairs. *Id.* Defendant Wood saw that plaintiff was wearing his shower shoes and plaintiff explained his daily painful routine to her, which included wearing shower shoes to leave his cell because his pain and swelling prevented him from wearing his normal shoes. *Id.* Plaintiff explained to

defendant Wood that it had now been three days since he was shot and forced to live on the upper tier. *Id.* Plaintiff told defendant Wood that he was putting pressure on his ankle and foot to use the stairs, and that according to the prison's own posted sign, using shower shoes and crutches on the stairs was "dangerous." *Id.* Plaintiff requested seeing a doctor for his severe pain because it was getting worse and he would like to get a lower-tier chrono. *Id.* Defendant Wood told plaintiff to put in a health care slip so that someone other than Wood could help plaintiff with his medical needs. *Id.* at 17-18. Plaintiff told defendant Wood that this was an emergency, but Wood said this was all she could do. *Id.* at 18. That same day, plaintiff did what defendant Wood suggested and filled out a medical request form for health care. *Id.*; *see id.* at 21 (Health Care Services Request Form requesting "pain meds").

Later that day, plaintiff was called back to the medical facility and his health care slip was answered by defendant Caballero, a registered nurse. *Id.* at 18. When defendant Caballero interviewed plaintiff about his pain medication, plaintiff told him that it had only been three days since plaintiff was shot, and Dr. Wahidi gave instructions about resting his ankle and foot, and to seek medical attention if there was increased pain, swelling, numbness, or redness. *Id.* Plaintiff told defendant Caballero that he was experiencing all these symptoms and that he was only given crutches and forced to live on the top tier only hours after he was shot and released from the hospital. *Id.* Plaintiff also told defendant Caballero he was being placed in dangerous circumstances because he could only wear his shower shoes when exiting his cell, and walking up and down the stairs using crutches could have caused him to fall. *Id.* Plaintiff informed defendant Caballero that he was putting stress on his ankle and foot and experiencing severe pain and suffering. *Id.* Plaintiff told defendant Caballero that he needed to walk the distance of about two and a half basketball courts to get from his cell to the

6

medical facility, and plaintiff was not getting proper medical care such as having a wheelchair. *Id.* Plaintiff requested a lower-tier chrono. *Id.* Defendant Caballero responded by saying that he could not do any of those things because he was the only one at medical. *Id.* Plaintiff was just released from defendant Caballero's care and forced back to his cell. *Id.*

On June 2, 2017, plaintiff, along with 90 other prisoners, was moved from upper-tier housing in one building to lower-tier housing in another building. *Id.* This was a security decision and not a medical one. *Id.* After nine stressful and painful days that caused plaintiff daily suffering, plaintiff was finally moved but by then he had permanent damage to his ankle and foot because they did not heal correctly. *Id.* at 17, 18. There was never a lower-tier chrono placed in plaintiff's file and at no time during this period was plaintiff seen by a doctor for his swelling, redness, severe sharp pain, and numbness in his ankle, foot, and toes. *Id.* at 18.

On June 2, 2017, plaintiff was transported in leg restraints so that he could appear in court in Lancaster. *Id.* Before getting on transportation from PBSP to CSP-LAC, plaintiff informed the transportation sergeant about his injury and showed the sergeant and other transportation officer how swollen his ankle and foot were. *Id.* Plaintiff asked the officers to be careful with him and make an exception of not putting leg restraints on him because they could cause more pain and damage. *Id.* The transportation sergeant responded that they would be gentle but he put the leg restraints on anyway. *Id.* The officers stopped at a rest stop after about 5 to 6 hours on the road, and plaintiff told the officers his foot felt numb and he could not move his toes. *Id.* After looking at his foot, the officers took off the leg restraints and kept on the road for 3 to 5 more hours. *Id.* Being in this tight place made plaintiff's ankle and foot worse because there was no leg space and he had to put his ankle and foot at an uncomfortable angle. *Id.*

On June 12, 2017, plaintiff was again on transportation and over the next

couple of days was in severe pain at Tracy State Prison and got back into leg restraints. *Id.* Plaintiff was on this second transportation for at least 7 to 9 hours before arriving at CSP-LAC. *Id.* On June 29, 2017, J. Smith, a registered nurse, interviewed plaintiff and noted in his findings that plaintiff was walking with a limp, there was a small area of swelling 34 days after his injury, and plaintiff was in extreme pain and had numbness in his foot and toes. *Id.*

On April 4, 2018, plaintiff went to a follow-up appointment with his primary care provider and explained to her how his ankle felt from his injury nearly a year ago. *Id.* After conducting tests, the provider told plaintiff his healing process was not done correctly and he now needs to use a permanent ankle orthosis. *Id.*

Based on the above allegations, plaintiff assert a claim for Eighth Amendment deliberate indifference to his medical needs. Plaintiff seeks declaratory relief and compensatory and punitive damages.

## III.

## LEGAL STANDARDS

The Prison Litigation Reform Act obligates the court to review complaints filed by all persons proceeding in forma pauperis, and by prisoners seeking redress from government entities. *See* 28 U.S.C. §§ 1915(e)(2), 1915A. Under these provisions, the court may sua sponte dismiss, "at any time," any prisoner civil rights action and all other in forma pauperis complaints that are frivolous or malicious, fail to state a claim, or seek damages from defendants who are immune. *Id.*, *see also Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc), overruled on other grounds, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

The dismissal for failure to state a claim "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In making such a determination, a complaint's allegations must be

8

accepted as true and construed in the light most favorable to the plaintiff. *Love v. U.S.*, 915 F.2d 1242, 1245 (9th Cir. 1990). Further, since plaintiff is appearing pro se, the court must construe the allegations of the complaint liberally and must afford plaintiff the benefit of any doubt. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Nonetheless, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads enough factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## IV.

## DISCUSSION

**A.     The Claim Against Defendants in Their Official Capacity Is Barred by State Sovereign Immunity Under the Eleventh Amendment**

The TAC states that all defendants are being sued in both their individual and official capacities. Defendants were all nurses at PBSP.

The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *see also Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is *not* a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166.

PBSP is a California State Prison, and the employees who work there are all employees of the California Department of Corrections and Rehabilitation or,

ultimately, the State of California. Thus, to the extent plaintiff names defendants in their official capacity, the entity that would be the real party in interest would be the State of California.

The Eleventh Amendment provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Eleventh Amendment bars federal jurisdiction over suits by individuals against a State and its instrumentalities, unless either the State unequivocally consents to waive its sovereign immunity or Congress abrogates it. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250 (9th Cir. 1992); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). While California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does not constitute consent to suit in federal court. *See BV Eng'g v. Univ. of Cal., Los Angeles*, 858 F.2d 1394, 1396 (9th Cir. 1988); *see also Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985) (holding that Art. III, § 5 of the California Constitution did not constitute a waiver of California's Eleventh Amendment immunity). Furthermore, Congress did not abrogate State sovereign immunity against suits under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 341-42, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979).

Accordingly, plaintiff's suit for damages against defendants in their official capacity is barred by the Eleventh Amendment. *See Edleman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) (barring claims against certain state officials under the Eleventh Amendment because "[w]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants" (citation omitted)).

The TAC states that plaintiff seeks declaratory relief as well as damages. Under *Ex Parte Young*, prospective relief against a state official in his or her official capacity (as opposed to the state itself or one of its departments or agencies) is not barred by the Eleventh Amendment. *See Milliken v. Bradley*, 433 U.S. 267, 289, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977); *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). But the declaratory relief sought here cannot be prospective. Plaintiff seeks a declaration that the acts complained of violated plaintiff's rights. The Supreme Court has held that the Eleventh Amendment prohibits a declaratory judgment that a state official violated federal law in the past. *Green v. Mansour*, 474 U.S. 64, 73-74, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985). With plaintiff no longer at PBSP, as in *Green* there is not nor could there be any claimed continuing violation of federal law. *See id.*

Defendants should therefore be dismissed to the extent they are named in their official capacity.

**B.     The TAC Fails to State a Claim for Deliberate Indifference to Medical Needs**

The TAC asserts as its sole claim that defendants were deliberately indifferent to plaintiff's medical needs in violation of the Eighth Amendment. TAC at 16.

"A prison official's 'deliberate indifference' to a substantial risk of harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Allegations of inadequate medical treatment by prison officials may give rise to a civil rights claim under the Eighth Amendment if a plaintiff can show that the defendants acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citation and quotation marks omitted). For allegations of deliberate indifference to medical needs by a prison official to state an Eighth

Amendment claim, they must satisfy two requirements. First, the deprivation or harm suffered by the prisoner must have been "sufficiently serious," that is, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), and citing *Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)). In the case of a medical need, the prisoner must establish a "serious medical need by demonstrating that [the] failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096 (internal citation and quotation marks omitted).

Second, the "prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297, 302-03). The mental state of deliberate indifference is equivalent to that of reckless disregard; to be liable, the prison official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 836-37. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. An Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842.

Deliberate indifference can be shown when "prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). But "[m]ere indifference,

negligence, or medical malpractice will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citation and internal quotation marks omitted).  "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.

      Plaintiff alleges facts that generally show a serious medical need, namely a gunshot wound in his right ankle.  But in the TAC plaintiff does not appear to claim he was denied medical treatment generally for that injury, nor could he based on his allegations and the documents included in the TAC.  These show, among other things, that after plaintiff was initially treated by Dr. Wahidi and then discharged from Sutter Coast Hospital and returned to PBSP:  that same day defendant Risenhoova reached out to nurses at the hospital to confirm what medication plaintiff had received and been prescribed, and then followed up by giving plaintiff ice, pain medication, and crutches as prescribed at his discharge, as well as ordering daily dressing changes the next day (TAC at 16; *see id.* at 29, 35, 41, 43, 44); two days later defendant Burr changed plaintiff's dressing and counseled him on caring for his wound, elevating his ankle, and how to use a cane properly (*id.* at 17, 37); the next day defendant Wood again changed his dressing (*id.*); and after plaintiff put in a health care slip in which plaintiff requested pain medication, defendant Caballero saw him the same day and went over his pain medication with him, and then continued to treat plaintiff in the days that followed. *Id.* at 18, 21, 28, 36, 38.

      What plaintiff does claim is that he did not promptly receive a lower tier housing assignment when he requested it from defendants on May 24, 26, and 27, 2017, and therefore remained in an upper tier cell for nine days, until June 2, 2017. Plaintiff alleges the nine days he spent in an upper tier cell caused permanent damage to his ankle and foot, preventing them from healing correctly.  TAC at 17,

18.  Where a prisoner alleges a delay in medical treatment constitutes deliberate indifference, the prisoner must show that the delay led to further injury.  *See Hallett v. Morgan*, 296 F.3d 732, 745-46 (9th Cir. 2002).  Here, plaintiff's allegations of causation – that spending nine days having to sometimes put pressure on his foot and ankle while he navigated the stairs on crutches to an upper tier cell caused permanent damage – are entirely conclusory.  Plaintiff alleges no facts to show that such occasional pressure in fact caused permanent injury.  In fact, plaintiff also alleges that in June 2017, he was transported in leg restraints for several hours a day over two days, and that being in a tight space over many hours with his ankle and foot at an uncomfortable angle made his ankle and foot worse. TAC at 18.  On its face, this transportation ordeal appears far more likely to have inflicted permanent damage to plaintiff's ankle and foot than his having to use the stairs for nine days.  Put simply, a mere nine-day delay in receiving a lower tier housing assignment, with no allegation of any catastrophic event such as a fall during that period, is not the sort of delay that typically supports an Eighth Amendment claim.  *Cf., e.g., Hunt v. Dental Dep't*, 865 F.2d 198, 200-01 (9th Cir. 1989) (prisoner stated deliberate indifference claim where he alleged prison officials were aware of his bleeding gums, breaking teeth, and inability to eat properly but delayed dental care by three months).

      Assuming the nine-day delay in receiving a lower tier assignment could be said to be a sufficiently serious deprivation to constitute a constitutional violation, however, this is not enough by itself to state a claim.  Plaintiff must also allege facts showing the named defendants were deliberately indifferent to his health or safety.  This has been the crux of the matter in the court's prior evaluations of plaintiff's claim as asserted in the initial, First Amended, and Second Amended Complaints.  Plaintiff alleges defendants knew about his severe pain and desire for a lower-tier placement, but did not immediately grant him such placement for

various reasons, and contends this failure demonstrates deliberate indifference.

Plaintiff clearly alleges he repeatedly requested a lower tier placement, but whether he in fact had a medical need for a lower tier placement is unclear. Although plaintiff complains he should have been housed on a lower tier and granted a wheelchair, plaintiff's discharge records explicitly prescribe crutches, notwithstanding that a wheelchair was used during his transport between the hospital and PBSP. *See* TAC at 18, 35, 41. A record from an examination on May 25, 2017, the day after his discharge from the hospital, notes plaintiff "is able to get up and down from examination table without assistance and able to bear weight." *Id.* at 45. And while plaintiff was prescribed crutches at discharge, another record from May 25, 2017 states, "Mobility Impairment (Lower Extremities) NOT Impacting Placement." *Id.* at 30. As such, while plaintiff's allegations characterize the nurse defendants as ignoring his request for a lower tier placement for various reasons, the records included in the TAC indicate a medical determination that plaintiff did not need a lower tier placement. Indeed, as plaintiff notes, he ultimately received a lower tier placement because of a security rather than a medical determination. *Id.* at 18. It is well-established that a difference of medically acceptable opinions concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (citations omitted); *Toguchi v. Chung*, 391 F.3d 1051, 1059-60 (9th Cir. 2004).

Even accepting plaintiff's allegations that this was not simply a difference of medical opinion, but rather a matter of the nurses not adequately responding to a claimed medical emergency, plaintiff's allegations in the TAC do not amount to deliberate indifference. In finding plaintiff's deliberate indifference claim in both the initial Complaint and FAC subject to dismissal, the court found plaintiff failed to allege facts suggesting the defendants named in the TAC had the requisite

mental state of deliberate indifference when they did not immediately grant him a lower tier placement. *See* docket no. 6 at 13-14, 16; docket no. 12 at 7-9. In reviewing the SAC, the court found it a close question whether plaintiff alleged facts showing deliberate indifference, and ultimately concluded the SAC may state a claim. *See* docket no. 18 at 9-13. Plaintiff then elected to file a Third Amended Complaint. After a careful review of the allegations in the TAC and the documents included in the TAC, the court finds they simply do not show deliberate indifference so as to state an Eighth Amendment claim.

      Plaintiff alleges defendant Risenhoova did not provide him with a lower tier chrono when he requested one, on May 24, 2017, they day he was discharged from the hospital, because she believed "plaintiff did not need the [chrono] because he was not going to be placed on the top tier." TAC at 17. Plaintiff criticizes defendant Risenhoova for assuming where correctional officers would place plaintiff rather than checking his placement in the computer before denying him a lower tier chrono. *Id.* Accepting the truth of plaintiff's allegations, this shows negligence at most. Nothing in these allegations suggests defendant Risenhoova knew that plaintiff faced a serious risk of harm if she did not issue a lower tier chrono for him. On the contrary, plaintiff's allegations are that Risenhoova believed a lower tier chrono was unnecessary. This is not deliberate indifference.

      As to the other defendants, plaintiff alleges defendants Burr, Wood, and Caballero each did not grant him a lower tier chrono because they were unable to do so. In response to plaintiff's request for a lower tier chrono on Friday, May 16, 2017, defendant Burr told him "it was not her job to pass out chronos." *Id.* When plaintiff pressed the point, defendant Burr told him it was Friday, no doctors were on call, and plaintiff had to put in a medical slip to see a doctor, which would take two to four weeks. *Id.* Plaintiff made the same request to defendant Wood the next day, and she likewise told him he needed to put in a health slip and "this was

1  all she could do." *Id.* at 17-18.  Plaintiff then did put in a Healthcare Services
2  Request Form that day, asking for "pain meds," and as a result plaintiff was called
3  back to medical that same day and interviewed by defendant Caballero about his
4  pain medication.  *Id.* at 18, 21.  But when plaintiff requested a lower-tier chrono
5  from defendant Caballero, Caballero responded that he could not do that because
6  he was the only one at medical.  *Id.* at 18.  These statements indicate that
7  defendants Burr, Woods, and Caballero believed they did not have the ability to
8  grant plaintiff a lower-tier chrono.  They did not simply reject his request.  Instead,
9  defendants Burr and Wood instructed him to put in a health slip to see a doctor
10 who would have the ability to grant the chrono if warranted.  Plaintiff responded
11 by putting in a health slip, but not for a lower-tier chrono.  Instead, plaintiff put in
12 a slip requesting pain medication, resulting in him seeing defendant Caballero over
13 the weekend, who spoke with plaintiff about pain medications but was again
14 unable to grant plaintiff the chrono he wanted.  Absolutely none of this indicates
15 any of these defendants purposefully ignored or failed to respond to plaintiff's pain
16 or possible medical need.  *See McGuckin*, 974 F.2d at 1060.  Plaintiff's allegations
17 show defendants treated plaintiff within the limits of their authority, and then
18 directed plaintiff as to what steps he needed to take to request a lower-tier chrono
19 from someone with the authority to grant it.
20      Plaintiff does not allege that defendant Burr, Wood, or Caballero was able to
21 grant him the chrono.  Instead, it appears the thrust of his claim is that defendants
22 should have immediately referred him to someone who could grant him a chrono
23 because this was an emergency situation.  *See* TAC at 17-18; *see also Berry v.*
24 *Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (prison nurses have an independent
25 duty to ensure that inmates receive constitutionally adequate care).  But the
26 problem with this argument is that plaintiff fails to allege any facts suggesting this
27 was the sort of emergency that required the nurse defendants to go outside normal
28

17

prison procedures. The actions at issue by the defendants here occurred over three days during a four-day period. Plaintiff complained he was in severe pain, and defendants accordingly treated him by caring for his wound, giving him ice and pain medication, and supplying him with crutches. The only thing they did not do was take extraordinary steps to make sure he obtained a lower tier chrono immediately. This failure does not amount to deliberate indifference because there is simply nothing in plaintiff's allegations or in the records of the TAC to suggest that any of the defendants had any reason to believe plaintiff faced a substantial risk of serious harm if he was not immediately granted a lower tier chrono.

For all of these reasons, the TAC fails to state an Eighth Amendment claim against any of the defendants for deliberate indifference to plaintiff's medical needs.

### C. **Plaintiff Should Not Be Granted Further Leave to Amend**

Unless it is clear that the deficiencies in a complaint cannot be cured, pro se litigants are generally entitled to notice of a complaint's deficiencies and an opportunity to amend prior to the dismissal of an action. *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam) (citing cases). But where amendment would be futile, a complaint may properly be dismissed without leave to amend. *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004).

Here, plaintiff can in no event state a claim against defendants in their official capacity, given the sovereign immunity of the State of California. And as to the claim against defendants in their individual capacity, the TAC is plaintiff's fourth effort to state a claim for deliberate indifference to his medical needs in violation of the Eighth Amendment. The court has previously and repeatedly advised plaintiff of the deficiencies in his claim, and has at best found it a close call whether he alleged deliberate indifference. After careful review, the court has

found plaintiff once again fails to adequately state a claim. It is apparent plaintiff has stated his best case and is unable to remedy the identified deficiencies. As such, further amendment would be futile.

## V.

## **RECOMMENDATION**

IT IS THEREFORE RECOMMENDED that the District Court issue an Order approving and accepting this Report and Recommendation, and directing that Judgment be entered dismissing the Third Amended Complaint and this action with prejudice and without leave to amend.

DATED: July 18, 2022

SHERI PYM
United States Magistrate Judge